## Reo Bus Lines Company v. Dickey.

(Decided March 25, 1927.)

### Appeal from Franklin Circuit Court.

1. Appeal and Error.—Jury's finding that collision between automobile and bus, resulting in injury of passenger, was fault of both vehicles, made on conflicting evidence, cannot be set aside by Court of Appeals.

2. Carriers.—Evidence of contributory negligence of bus passenger injured in collision with automobile, on theory that her arm was protruding or dangling outside open window in bus, held for jury.

3. Damages.—$6,500 for injury to arm which was so mangled that it had to be amputated below the elbow held not excessive.

4. New Trial.—Where defendant, on failure of witness to appear for trial, did not ask for continuance on ground of absence of witness, and elected to proceed with trial without him, a new trial will not be awarded in order that his testimony may be heard.

5. New Trial.—Rule requiring affidavit of newly discovered witness in order to warrant a new trial on such ground is a salutary one.
6. New Trial.—New trials ought not to be lightly granted, and, when granted for newly discovered evidence, there should be reasonable assurance that witness will testify on another trial as claimed.
7. New Trial.—Trial court held to have properly refused to grant a new trial for newly discovered evidence, where witnesses presented no affidavit as to what they would testify to if new trial were granted, and affidavit of counsel showed that one witness had changed his position since trial, and that other witness had never been interviewed, particularly in view of fact that testimony of such witnesses was merely cumulative.
8. New Trial.—Generally, evidence which is merely cumulative will not warrant court in granting new trial.
9. Appeal and Error.—In action against joint defendants, statement of plaintiff's counsel relative to insolvency of one defendant, unsupported by facts in evidence, held improper, but not prejudicial under Civil Code of Practice, section 134, in view of verdict assessing substantial portion of total verdict against defendant, whose insolvency was intimated by counsel.

R. W. KEENON and GUY H. BRIGGS for appellant.

LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellee recovered a judgment in the sum of $6,500 for personal injuries sustained by her while a passenger on one of the busses of the appellant, Reo Bus Lines Company. Of this sum $5,000 was assessed against the bus company and $1,500 against Harry Herrick, its codefendant. The bus company alone appeals.

Late in the afternoon of August 29, 1925, the appellee boarded one of the busses of appellant at Frankfort, Ky., bound for Louisville, some 55 miles away. The day was very warm, and all the windows in the bus were open. She seated herself on the left-hand side of the rear seat of the bus, and was so seated at the time of the accident which resulted in her injury. Long Run is located in Jefferson county, Ky., about 18 miles from Louisville. The road from Frankfort crosses a stream at this point on a one-way bridge. The road on each side of this bridge comes down to it in a very sharp descent of a half mile or better. The accident out of which this litigation arose happened near the top of the descent on the Frankfort side of the bridge. The appellant's bus had just breasted the top of the hill, and was going down the

descent towards the bridge when it met Herrick, driving a Ford coupe in the opposite direction. The left front tire of Herrick's Ford was flat. The front ends of the Ford and the bus passed each other safely, but the left front fender and wheel of the Ford and the back end of the bus collided. Whether appellee's left arm was then resting with its elbow on the window sill, but inside the bus, or was protruding or dangling down outside the window, is in dispute; there being evidence pro and con on this question in this record. At all events, the collision so mangled the appellee's arm that it had to be amputated just below the elbow. For the appellee there was evidence to show that the collision occurred by reason of the fact that neither the bus nor the Ford kept to their respective sides of the road, but, after passing each other, turned too abruptly back into the center of the road, thus sideswiping each other. Of course, the respective defendants each contended that he or it was on his or its right side of the road, and that he or it was run into by the negligence of the other. Although the evidence probably preponderated to the effect that the bus was on its right side of the road, and that it was the Ford which negligently ran into it, yet there was substantial evidence to show that this collision was caused by the fault of both the Ford and the bus. This being true, under the many decisions of this court it was for the jury to say whose fault caused this collision, and its finding that it was the fault of both of the defendants cannot be set aside by us. Mann v. Woodward, 217 Ky. 491, 290 S. W. 333.

For reversal the appellant bus company relies on the grounds: (1) That the appellee was guilty of contributory negligence as a matter of law; (2) that the verdict is not sustained by sufficient evidence; (3) that the damages are excessive; (4) newly discovered evidence; and (5) misconduct of the appellee's counsel in arguing her case to the jury.

The appellant's contention that the appellee was guilty of contributory negligence as a matter of law is bottomed on its theory that her arm was protruding or dangling outside the window. Conceding, without deciding, that if this had been so, she would have been guilty of contributory negligence as a matter of law, yet we find there was an abundance of evidence to support her contention that she had her arm inside of the bus, with just her elbow resting on the window sill. The court by in-

struction No. 3 practically told the jury that, if it believed the facts on this question to be as the appellant contended, then the appellee was guilty of contributory negligence. But certainly under the contrariety of evidence here appearing it was for the jury to say whether the facts were as appellant contended or as appellee contended. If they were as the appellee contended, it cannot be said that she was guilty of contributory negligence as a matter of law. There is no merit in appellant's first contention.

Little need be said on grounds 2 and 3. There was substantial testimony to sustain the verdict and $6,500 is not an excessive amount for the pain and suffering sustained by appellee and the permanent impairment of power to earn money on her part due to the loss of her arm. Central Consumers' Co. v. Lamberg, 195 Ky. 131, 242 S. W. 12; South Covington & C. St. Ry. Co. v. Burns, 150 Ky. 348, 150 S. W. 343.

In support of its ground that it is entitled to a new trial by reason of newly discovered evidence, appellant presents the testimony which it is claimed four newly discovered witnesses will give. Considering these witnesses seriatim, we find that Royer was expected by the appellant to be a witness for it at the trial. Due to an accident to a bus he was driving on the morning of the trial he did not show up for the trial. Appellant, however, did not ask the court for a continuance on the grounds of his absence. Having elected to proceed with the trial without him, appellant cannot now ask a new trial in order that his testimony may be heard. Benge's Adm'r v. Marcum, 194 Ky. 121, 238 S. W. 174. So far as Moore and Jeter are concerned, appellant presented no affidavit from either of them as to what they would testify, if a new trial were granted. Realizing that the general rule requires such an affidavit (Quarles v. Denning, 173 Ky. 792, 191 S. W. 493), the appellant sought to avoid its effect by presenting the affidavit of its counsel, which recited that the appellant had been unable to get in touch with either Moore or Jeter for the purpose of having them sign the affidavits prepared for them. But appellant did not ask the trial court for additional time within which to get these affidavits signed. The rule requiring the affidavit of the newly discovered witness is a salutary one. Counsel may in the best of faith present what they think the newly discovered witness will say on the next trial, and yet they may be utterly mistaken about it. New trials ought not to be lightly

granted.  There should be some reasonable assurance that the witness will testify on another trial as claimed. The wisdom of the rule is well illustrated by this case. Appellant's counsel, in his affidavit, tells us that Jeter was summoned as a witness on the trial of this cause, but was allowed to go because he said he knew nothing about how the accident happened.  Now it is claimed that he has changed his position.  He may change it again, for, as yet, he has never stated under oath what he knows about this matter.  There is no reasonable assurance that he will testify as appellant says, in the best of faith, he will.  As to Moore, the affidavit of appellant's counsel admits that the appellant has never been able to interview him and that indeed it has not been able to find him. That he will testify as appellant says he will is, of course, pure speculation.  Under such a showing the trial court did not err in refusing to grant a new trial in order that these two witnesses might be given an opportunity to testify.  We do not mean to say that, if the lower court had refused the appellant a reasonable opportunity to get these affidavits signed by the witnesses, then the affidavit of appellant's counsel and vice president might not be sufficient.  But at least, in the absence of a request for a reasonable time within which to get such affidavits signed, the general rule above noted ought not to be relaxed.  But, beyond all this, the testimony of these two witnesses was merely cumulative.  Appellant produced on the trial a number of witnesses who testified to substantially the same facts as it is claimed these two witnesses would. The general rule is that evidence which is merely cumulative will not warrant the court in granting a new trial. Isgrig v. Jacoby, 199 Ky. 744, 251 S. W. 945; Ray v. Ray, 196 Ky. 579, 245 S. W. 287.  Hence the trial court for this reason too properly declined to give the appellant a new trial.  The same is true with reference to the newly discovered witness Hedden.

Appellant's most serious ground for reversal is that which is based on the misconduct of appellee's counsel in his closing argument to the jury.  In the bill of exceptions the trial court certified that it did not remember the exact language used by the appellee's counsel which appellant claims constitutes the misconduct.  Appellant, in the affidavits filed by it and made part of the bill of exceptions by the court, says that the appellee's counsel in arguing her case to the jury, said that the appellant was

trying to shift the whole blame of this accident upon its codefendant, Herrick, because he was insolvent. The appellee in affidavits likewise incorporated in the bill of exceptions says that the appellant, in arguing this case to the jury, said that the appellee and Herrick were colluding to throw the blame of this accident on the appellant, giving as a basis for this assertion the fact that Herrick and the appellee had signed an agreed order prepared by appellee's counsel controverting of record the appellee's petition, and the further fact that Herrick showed up on the trial without a lawyer and testified in behalf of the appellee. Appellee then says that, to refute this charge of collusion, her counsel stated in his closing argument that the reason Herrick showed up without a lawyer was that he was perhaps insolvent. No matter which version of what transpired we assume to be the correct one, we cannot set our seal of approval on the argument of appellee's counsel. Herrick's insolvency, if he was insolvent, was, so far as this record is concerned, purely a matter of speculation. The statement of appellee's counsel was unsupported by the facts in evidence. If appellee's counsel did not by the statement he admits he made designedly seek to influence the jury in its fixing of the blame for this accident, he ought to have realized that the natural tendency of such a statement would be to do just that thing. Appellant was entitled to have the question of who was to blame for this accident determined independently of whether forsooth the one on whom the blame might be put was insolvent or not. The whole tendency of the admitted statement of appellee's counsel was to influence the jury to put the blame of the accident on a solvent defendant. Such argument cannot be commended. But, under the Code of Civil Practice, we cannot reverse a judgment for error, unless the error was prejudicial. Civil Code, section 134. In view of the verdict in this case, we cannot say that the improper argument of appellee's counsel, conceding it to have been as appellant contends, was prejudicial to appellant. The seventh instruction in this case was the standard instruction in cases of this sort. By it the court told the jury in substance that it could find a joint verdict against both defendants, or it could find against the defendants in separate amounts, or it could find for one defendant and against the other. Had the jury been improperly influenced by the argument of appellee's counsel, and wanted to put the burden of this accident on the

solvent defendant, it would undoubtedly have found a joint verdict against both defendants, leaving the solvent one to pay it. It did not do this, however, but assessed a very substantial portion of the total verdict against the defendant whose insolvency was so strongly intimated by appellee's counsel. By so doing the jury demonstrated that the solvency of the defendants did not enter into its deliberations, but only the relative blame for the causing of the collision. It follows that the argument of appellee's counsel, though highly improper, was not under the circumstances of this case prejudicial.

Perceiving no error prejudicial to appellant's substantial right, we conclude that the judgment of the lower court must be, and it is hereby, affirmed.