# Big Sandy & Kentucky River Railway Company, et al. v. Allen.

(Decided January 10, 1928.)

## Appeal from Magoffin Circuit Court.

1. Railroads.—To recover value of property destroyed by fire, alleged to have been ignited by sparks and cinders from locomotive engine, there must be evidence from which jury could reach conclusion that property was destroyed by fire caused by sparks, fire,

and cinders escaping or emitted from locomotive operated by defendants, or evidence establishing state of facts from which it may be inferred that property was so destroyed.

2.  Railroads.—Evidence in action against railway and lumber companies for value of property destroyed by fire held sufficient to warrant jury finding that property was burned by fire ignited and caused by sparks, fire, and cinders escaping or emitted from locomotive passing immediately before discovery of fire; there being no other reasonable explanation.

3.  Railroads.—In action against railway and lumber companies for value of property destroyed by fire, evidence held to warrant jury's conclusion that locomoitve or engine, which passed immediately before discovery of fire, was not equipped with spark arresters or others devices required by law.

4.  Railroads.—That plaintiff, suing railway and lumber companies for value of planing mill machinery destroyed by fire, set by sparks, etc., from locomotive, permitted shavings and other refuse from planing operations to accumulate near mill building, held immaterial, in view of evidence that such accumulation was not cause of fire.

PRATER & RAMEY for appellants.

J. W. HOWARD for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant Big Sandy & Kentucky River Railway Company owns and operates a short line of railroad passing through the southern portion of Magoffin county. The Dawkins Log & Mill Company operated trains over the railroad line for the purpose of transporting its lumber to market. The appellee, on the 29th day of March, 1925, owned and operated a planing mill near the mouth of Salyer branch, which was located near the railroad right of way. About noon on the date mentioned a train drawn by locomotive engine No. 10 passed the house in which the planing mill was located, and within a few minutes thereafter fire was discovered in or about the house, which destroyed the house and the machinery and equipment belonging to appellee located therein.

The appellee instituted his suit to recover the value of the machinery, alleging in his petition that the fire with its consequent damage to his property was caused by the negligence of the appellants in failing to equip and maintain, in and upon the smokestacks of its engines, such screens, fenders, or spark arresters as would prevent as far as possible the escape of fire, sparks, or cinders therefrom, and further that by reason of the negligence and

manner in which the trains were operated, fire, sparks, and cinders were emitted from the engine, and that the fire, sparks, or cinders ignited the property which was destroyed. The appellants denied the negligence alleged in the petition, and pleaded contributory negligence on the part of the appellee. The answer contained affirmative allegations that the chimney or smokestack upon the locomotive and engine was equipped with the most modern and effective screens, fenders, and spark arresters known to science and in common and general use by the railway operators of the country, and that they were in good condition and properly placed and adjusted in the chimney or smokestack on the engine which passed the property immediately preceding the fire.

A trial resulted in a verdict in favor of appellee for $600. The appellants insist that appellee was not entitled to recover unless he established by the evidence that his property was burned and destroyed by a fire ignited and caused by sparks, fire, and cinders which escaped or were emitted from or by a locomotive or engine operated by appellants. It is true that there must be evidence from which the jury could reach the conclusion that the property was so destroyed, or there must have been established by the evidence a state of facts from which it may have been inferred that the property was so destroyed. The evidence showed or tended to show that engine No. 10, the one passing the property immediately before the fire was discovered, had been washed out on the day before the fire; that it was the geared type of engine used for pulling heavy loads over steep grades; that such an engine is more liable to throw off sparks or cinders than other kinds; that fire had been started in the engine with wood a few hours before it passed the mill building; that the engine was more apt to throw sparks just after it had been cleaned out and fired with wood than at other times. The evidence also showed that the wind was blowing in the opposite direction from that in which the train was traveling, and that by reason of this fact the engine was more apt to emit sparks which would ignite the property. A number of witnesses testified that they were in sight of the mill building at the time the engine passed. The day was Sunday, and there was no one working at the mill, and no one was seen about it immediately preceding the fire or leaving it immediately after the fire. Within a very few minutes, probably four or five minutes after the engine passed, or it might have been a little

longer, witnesses saw that the building was burning. There was some testimony that dead cinders were found on a path near the mill which were larger than the usual size of cinders emitted by an engine.

Considering all of the evidence on this point, we have concluded that there was enough evidence to enable the jury to believe that the property of appellee was burned by a fire ignited and caused by sparks, fire and cinders which escaped or emitted from the locomotive which had passed immediately before the fire was discovered. Clearly the jury might infer from the proven facts and circumstances that the property was so destroyed. As was said in the case of L. & N. R. R. Co. v. Deaton, 219 Ky. 715, 294 S. W. 149:

"There was no reasonable explanation for this fire other than that it was started by sparks from appellant's engine which was pulling the freight train. It is true no witness saw any sparks, due very probably to the fact that this fire started during the middle of the forenoon, but the circumstances clearly indicated them as the origin of the fire."

The opinion in the case quoted from was based on a number of cases decided by this court, chief among them the case C., N. O. & T. P. Ry. Co. v. Falconer, 97 S. W. 727, 30 Ky. Law Rep. 152. In that case it was found that the fire was more naturally traceable to the sparks emitted by an engine than to any other cause shown by the proof, and that there was an entire absence of evidence of any other cause.

It is next insisted by the appellants that the evidence did not show that the property was caused to ignite and burn by reason of any negligent act or acts of the appellants, or by reason of any failure of duty enjoined by law upon the appellants. It is argued that, although the evidence may have shown that the property was destroyed by sparks, fire, or cinders emitted from the engine, still there was no evidence showing that appellants had failed to maintain in or upon the locomotive or engine, spark arresters which were defective or defectively adjusted, and that appellants were only required to install and maintain devices that would prevent as far as possible the escape of sparks, fire, or cinders from the locomotive or engine. It is argued that there is no evidence showing that the locomotive or engine was not

equipped as well as the law required it to be equipped. We cannot agree with the contention made by appellants. There was evidence that the cinders which escaped were larger than could possibly have escaped if the smokestack or chimney had been equipped with such spark arresters as appellants admit are required. There was some evidence tending to show that the locomotives and engines operated by the appellants were not equipped at all with spark arresters at times when they were operated, and there is evidence to show that hoods were placed on the smokestack or chimney of the engine which passed immediately preceding the fires the next day after the fire or within a few days thereafter. There was evidence from which the jury might reach the conclusion that the locomotive or engine which passed immediately preceding the discovery of the fire was not equipped with spark arresters or other devices as required by law.

Complaint is made that appellee permitted and allowed shavings and other refuse from his planing operations to accumulate near the mill building, and that because of his conduct in this respect he should be denied a recovery. Without undertaking to decide whether his acts in this respect might have precluded a recovery, we find from examination of the evidence that the accumulation of combustible material was not the cause of this particular fire.

No complaint is made of the instructions, and the only complaint found in the brief filed in behalf of appellants is directed at the points which we have discussed.

Judgment is affirmed.